**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 3:20-cr-30042-NJR-1 |
| ) | |
| CHRISTOPHER R. GRANT, ) | |
| ) | |
| Defendant. ) | |

**STIPULATION OF FACTS**

The United States of America, through its attorneys, Steven D. Weinhoeft, United States Attorney for the Southern District of Illinois and Assistant United States Attorney Ali S. Summers, enters into the following Stipulation of Facts with the Defendant, **CHRISTOPHER R. GRANT,** and his attorneys, pertaining to the relevant conduct of the defendant within the scope of U.S.S.G. §1B1.3. The parties hereby stipulate and agree as follows:

**I. Background of the Investigation**

1. The Illinois State Police (ISP) received information from a confidential source that Christopher R. Grant was selling crack cocaine and marijuana from his house in East St. Louis, Illinois, located within the Southern District of Illinois. The source reported seeing multiple firearms inside of the house during past drug transactions.

2. ISP Agents opened a criminal investigation and directed controlled drug purchases on July 9, 2019, July 18, 2019, and August 21, 2019. In each of the controlled purchases, the source was searched in advance, surveillance was conducted, official advanced funds were used, and other controls were put in place to protect the safety of the source and the integrity of the investigation.

3. On July 9, 2019, ISP agents supplied $170 so the source could attempt to purchase $120 worth of crack cocaine and $50 worth of marijuana from Christopher Grant at his house. The

source walked to Grant's home located at 1424 No. 42nd, East. St. Louis, and entered the house. Grant distributed approximately 2.3 grams of crack cocaine and 6.1 grams of marijuana in exchange for $170. Laboratory testing later confirmed 1.9 grams of a substance containing crack (cocaine base).

4. On July 18, 2019, ISP agents supplied $110 so the source could attempt to buy 2 grams of crack cocaine from Christopher Grant. The source again walked to the same address, where Grant was found sitting in his Cadillac SUV in front of the house. Grant motioned for the source to meet at the car, where Grant distributed approximately 2.1 grams of crack cocaine in exchange for $110. Subsequent laboratory testing confirmed the presence of 1.02 grams of a substance containing crack cocaine (cocaine base).

5. On August 21, 2019, ISP agents planned for the source to purchase $60 worth of crack cocaine and $40 of cannabis from Christopher Grant. The source walked to Grant's house and entered. Grant distributed approximately 1.1 grams of crack cocaine and 3.5 grams of marijuana in exchange for $100. Laboratory testing later confirmed that the substance contained crack cocaine (cocaine base). During this transaction, the source saw a large amount of cocaine in plain view, and Grant protected himself and his property during this drug offenses by possessing a 9 mm handgun, an AK style rifle, and AR-15 style rifle in close proximity while Grant distributed the drugs.

6. Grant used his residence to store marijuana and crack cocaine, along with scales and other paraphernalia. Grant regularly used his home to sell crack cocaine and marijuana at all times of the day and night. Grant admitted selling crack cocaine to support his own drug habit, estimating that he bought an eight ball or quarter ounce per week and used three grams himself and sold the rest. He said other times he would buy half an ounce at a time.

## II. ISP Obtains a Search Warrant

7. Following the three controlled purchases and the use of firearms to protect the drug activity, ISP agents applied for a state search warrant for Grant's house. The search warrant was authorized by the St. Clair County Circuit Court on August 22, 2019. ISP agents began preparations to execute the warrant and arrived at the address the following morning at 5:32 AM, shortly before sunrise.

8. The ISP Special Weapons and Tactical Team (SWAT) was present to execute the search warrant due to the threat of firearms and because the front door to the residence was fortified with steel bars. A convoy of ISP personnel arrived at Grant's house that morning, including an armored "bearcat" tactical vehicle, multiple marked patrol cars, and a Ford F350 diesel pickup truck.

9. ISP officers drove the F350 diesel truck onto the yard adjacent to the porch, facing the front of the house, running, with its headlights on. The truck was moved into this position to forcibly remove the steel bars that served as a barricade to protect Grant's solid wooden front door. Three SWAT officers went onto the porch to connect chains from the truck's front hitch to the steel bars. SWAT officers were planning to back the truck up and forcibly remove the bars from the door frame so that they could access the front door and make entry.

10. One of those three SWAT officers on the porch was ISP Trooper Nick Hopkins, who was connecting a chain from the truck to the steel bars protecting the front door. Christopher Grant was sleeping on the couch in the living room on the other side of the front door. Grant said that the activity on the porch woke him up, so he knew that a person was on the other side of the locked solid wood door and steel bars when he fired his gun.

### III. Post-Arrest Interviews

11.     During the first post-arrest interview, Grant said that he was sleeping on his couch in the front living room with his Glock Model 19, 9 mm caliber pistol (serial number ACXA695) with an extended magazine when he heard a loud boom. He said that he started firing his gun while still laying down as an immediate reaction because he thought someone might be breaking in. Grant said that he was sleeping on the couch with the gun "because in the bedroom you can't hear nothing up that way back in there."

12.     Later, in a separate interview, Grant explained that about two weeks earlier, he had been robbed when some people broke in a side door and stole $300, a necklace, and some marijuana. Grant said that he did not know who was on his porch, but he feared whoever it was might be planning to rob him, so he picked up his gun and shot towards the sound of the person. He said that he did not intentionally shoot at the police. He said that after he fired his gun that he learned that police were outside.

13.     Grant fired his gun a total of three times.

### IV.    Trooper Hopkins is Killed

14.     Officers did not enter the house to execute the search warrant. Rather, during preparations, ISP Tpr. Nick Hopkins had just finished connecting the chain from the F350's front hitch to the steel bars and was turning away from the house to walk back down the steps when one of Grant's gunshots passed through the solid wooden door, and struck him in the head entering through his right temple.

15.     Hopkins immediately fell and cover officers returned "directed fire." Other ISP SWAT Team members went to the porch to try to rescue Tpr. Hopkins, who was rushed to St. Louis University Hospital. He was pronounced dead at 6:10 p.m. on August 23, 2019.

## V. Grant was a Prohibited Person

16. On August 23, 2019, Grant knew that he had been previously convicted of a felony punishable by a term of imprisonment exceeding one year, being, Unlawful Possession of Controlled Substance, on October 30, 2003 in Case No. 03-CF-1274 in St. Clair County, Illinois.

17. When officers later searched his house, they recovered the following firearms that traveled in or affected interstate commerce:

   a. A Glock, Model 19, 9mm caliber pistol, serial number ACXA695; Grant admitted that this was the gun he discharged, and forensic testing confirmed that his DNA was found on it.

   b. A Romarm Cugir AK-style Model Draco, 7.62X39 caliber pistol, serial Number PE-4350-2018 RO;

   c. A Bushmaster AR-15 style, Model Carbine 15, .223/.556 caliber pistol, serial number CBC045924;

   d. A Mag. Tactical Systems LLC, Model NG-G4, multi-caliber rifle, serial number MTS08854;

   e. A Smith and Wesson, Model 36, .38 Special caliber revolver, serial number 489356;

   f. A Berretta, Model APX PB, 9X19 caliber pistol, serial number A007963X;

   g. A Glock, Model 21 Gen 4, .45 auto caliber pistol, serial number XHD639;

   h. A Taurus, Model PT809C, 9mm pistol, serial number TKN247331;

UNITED STATES OF AMERICA,

_____  
**CHRISTOPHER R. GRANT**  
Defendant

_____  
**STEVEN D. WEINHOEFT**  
United States Attorney

_____  
**PRESTON HUMPHREY, JR.**  
Attorney for Defendant

_____  
**ALI S. SUMMERS**  
Assistant United States Attorney

_____  
**DAVID A. BRUNS**  
Attorney for Defendant

Date: 7/9/21

Date: 7-9-21